## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                    No. CR 10-0766 JB

IVAN ROCHIN,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Suppress, filed April 28, 2010 (Doc. 21)("Motion"). The Court held an evidentiary hearing on August 20, 2010. The primary issues are: (I) whether the pat-down search that Albuquerque, New Mexico Police Officer Joe Moreno conducted on Defendant Ivan Rochin was in violation of the Fourth Amendment to the United States Constitution; and (ii) whether the firearm and ammunition that were discovered in the search of the vehicle that Rochin was driving are inadmissible because they were obtained as the result of an illegal search. The Court finds that Moreno had reasonable suspicion that Rochin was armed and dangerous at the inception of the pat-down search, and that Moreno did not exceed the permissible scope of a pat-down search. Because the Court finds that Moreno's pat-down search of Rochin did not violate the Fourth Amendment to the United States Constitution, the Court finds that the firearm and ammunition are admissible as they were not obtained as the result of a constitutional violation. The firearm and ammunition were instead obtained in a valid inventory search.

## FACTUAL BACKGROUND

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues. See Fed. R. Crim. P.

12(d) ("When factual issues are involved in deciding a [pretrial] motion, the court must state its essential findings on the record."). The findings of fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for purposes of rule 12(d). The Court makes these findings under the authority of rule 104(a) of the Federal Rule of Evidence, which requires a judge to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure and the voluntariness of an individual's confession or consent to search. See United States v. Merritt, 695 F.2d 1263, 1269-70 (10th Cir. 1982), cert. denied, 461 U.S. 916 (1983). In deciding such preliminary questions, the other rules of evidence, except those with respect to privileges, do not bind the Court. See Fed. R. Evid. 104(a). Thus, the Court may consider hearsay in ruling on a motion to suppress. See United States v. Merritt, 695 F.2d at 1269.

1.      On January 4, 2010, Moreno was on patrol when he observed a white Mitsubishi four-door sedan bearing California license plate number 5MIK482.  See Transcript of Hearing at 5:2-4 (taken August 20, 2010)(Cairns, Moreno)("Tr.");[1]  id. at 6:7-10 (Moreno); id. at 40:20-24 (Pori, Moreno).

2.      Rochin was driving the Mitsubishi. See id. at 39:23-40:1 (Pori, Moreno).

3.      As Moreno drove by the Mitsubishi, he observed that Rochin's body became stiff, that Rochin immediately took in a breath, and that Rochin never again looked over at the police car that Moreno was driving. See id. at 7:4-13 (Moreno).

4.      Moreno followed the Mitsubishi and ran a registration check on the vehicle.  See id. at 8:17-18 (Moreno); id. at 9:9-17 (Moreno).

5.       Moreno learned that the license plate was registered to a Ford and that the vehicle

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

registration was expired. See id. at 9:18-10:10 (Cairns, Moreno).

6.      Moreno initiated a traffic stop because Moreno was driving with expired registration.[2] See id. at 10:11-17 (Cairns, Moreno).

7.      The traffic stop was initiated at 2:30 a.m. See id. at 31:16-18 (Pori, Moreno).

8.      As Moreno approached the vehicle, the Albuquerque Police radio dispatcher urged Moreno to use caution in contacting the driver of the Mitsubishi, because the vehicle and its driver had been reported to have been involved in a drive-by shooting and, as such, the driver might be armed.  See id. at 11:4-15 (Moreno).

9.      The dispatcher did not provide a physical description of the driver.  See id. at 47:25-48:6 (Pori, Moreno).

10.      The dispatcher did not indicate how the drive-by shooting was connected to the Mitsubishi.  See id. at 47:25-48:6 (Pori, Moreno).

11.      Rochin was an alien illegally present in the United States.  See Criminal Complaint, filed February 12, 2010 (Doc. 1).

12.      Rochin does not understand English and speaks only Spanish.  See Tr. at 13:1-3 (Moreno).

13.      Moreno's Spanish is limited.  See Tr. at 51:10-11 (Moreno).

14.      Moreno first asked Rochin for his driver's license, registration, and insurance in

---

[2]Rochin contends that, shortly after Moreno learned that the license plate was not associated with the Mitsubishi, he decided to initiate a traffic stop. See Defendant's Reply to the United States' Amended Response to the Defendant's Motion to Suppress Evidence, filed June 15, 2010 (Doc. 30). At the hearing on August 20, 2010, Moreno stated that he was unable to tell whether the car that Rochin was driving was a Ford, as the decals were removed. See Tr. at 10:5-10 (Cairns, Moreno). Moreno stated that he initiated the traffic stop because the registration was expired. See id. at 9: 18-10:18 (Cairns, Moreno). The Court accepts Moreno's testimony that he initiated the stop because the registration was expired.

English, but when Rochin indicated that he did not speak English, Moreno repeated the request in Spanish.  See id. at 13:1-3 (Moreno).

15.     Rochin told Moreno that he did not have a driver's license, registration, or insurance, but provided Moreno with some form of identification, either a Mexican or immigration identification. See id. at 13:19-21 (Moreno); id. at 14:4-8 (Cairns, Moreno).

16.     Moreno did not carefully look at the identification, as he was more concerned with waiting for his backup and telling the dispatcher that he had heard her words of caution.  See id. at 14:19-15:5 (Moreno).

17.     After Moreno initially contacted Rochin and obtained his identification, Moreno waited for other Albuquerque police officers to arrive to assist him with the stop because of the information he had received regarding the role of the Mitsubishi and its driver in a drive-by shooting.  See id. at 14:19-15:10 (Moreno).

18.     After the back-up officers arrived, Moreno re-approached Rochin.  See id. at 15:3-8 (Moreno).

19.     Moreno then asked Rochin to exit the Mitsubishi.  See id. at 15:6-10 (Moreno).

20.     Rochin complied with Moreno's request.  See id. at 15:16-21 (Moreno).

21.     Moreno conducted a pat-down search of Rochin in an effort to determine whether he was in possession of any weapons.  See id. at 15:19-16:3 (Cairns, Moreno).

22.     During the pat-down search, Moreno felt a bulge in the right pocket of Rochin's clothing.  See id. at 16:4-7 (Cairns, Moreno).

23.     Moreno did not know if the bulge represented a weapon.  See id. at 16:6-12 (Moreno).

24.     Moreno asked Rochin: "Quien es?"  Id. at 52:23-53:11 (Pori, Moreno); id. at 50:14-

-4-

18 (Pori, Moreno).

25.     In Spanish, the phrase "Quien es" translates into "Who is this." Cassell's Spanish-
English, English-Spanish Dictionary 286, 495 (1978); Tr. at 50:20-21 (Pori).

26.     As Moreno asked, "Quien es?" he was using body language to signify that he meant
that he was asking about the object in Rochin's right pocket.  See Tr. at 50:14-51:14 (Pori, Moreno).

27.     Moreno's meaning was apparent to Rochin.[3]  See id. at 51:10-14 (Moreno).

28.     Moreno testified that Rochin responded: "No sabe."  Id. at 51:16-52:9 (Pori,
Moreno).

29.     In Spanish, the phrase "No sabe" literally translates into "He doesn't know."
Cassell's Spanish-English, English-Spanish Dictionary 438, 527 (1978); Tr. at 52:5-6 (Pori).

30.     Moreno understood Rochin's statement as: "I don't know."[4]  See Tr. at 52:2-9 (Pori,
Moreno).

31.     Moreno removed the object from Rochin's pocket, because he thought it was large
enough that it could have been a weapon and that he was not safe leaving it there.  See id. at 16:6-12
(Moreno)(stating that the object was large enough for him to feel that it may have been a weapon);
id. at 97:20-21 (Moreno)(stating that it was a large enough bulge that he was not safe leaving it in
Rochin's pocket); id. at 53:19 (Moreno).

32.     Moreno discovered that the object was a glass pipe containing a green, leafy

---

[3] Even though there was a possibility of confusion, the Court finds that Moreno's meaning
was apparent. The Court finds that it was apparent, in part, because Rochin responded in a manner
that suggests he knew Moreno asked "What is it?"  Also, Rochin did not argue or testify that he was
confused by Moreno's question.

[4] Even though there was a possibility of confusion, the Court finds that Rochin's meaning was
apparent. The Court finds that it was apparent, in part, because Rochin was responding to Moreno's
question regarding the object in his pocket.

substance that Moreno identified as marijuana.  See id. at 16:21-17:9 (Cairns, Moreno).

33.     Moreno continued to conduct a pat-down search of Rochin and discovered another bulge in his left pocket.  See id. at 19:15-19 (Cairns, Moreno).

34.     Moreno asked Rochin, in Spanish, what the object was.[5] See id. at 53:23-54:3 (Pori, Moreno).

35.     Rochin again responded: "No sabe," which Moreno interpreted as meaning that Rochin did not know.[6] Id. at 54:5-8 (Pori, Moreno).

36.     Moreno was unsure whether the bulge was a weapon or not.  See id. at 54:20-23 (Moreno).

37.     Moreno removed the object from Rochin's pocket, because it was large enough to be a weapon and because he thought, based on the circumstances, that it could have been used to harm him.  See id. at 54:20-23 (Moreno)(stating that, based on the circumstances, the object was large enough for him to feel that it could be a weapon).

38.     Moreno discovered that the object was a glass tube that he believed could be used in the consumption of methamphetamine or crack cocaine.  See id. at 19:15-25 (Cairns, Moreno).

39.     Moreno placed Rochin under arrest for possession of narcotics paraphernalia and possession of marijuana.  See id. at 20:16-19 (Cairns, Moreno).

40.     After placing Rochin under arrest, and after placing Rochin in Moreno's police squad

---

[5]At the hearing on August 20, 2010, Moreno testified that he asked Rochin: "Quien es?"  Tr. at 54:2-4 (Pori, Moreno). Again, the Court finds that the meaning of this question was apparent because of the surrounding circumstances and Moreno's body language. See Tr. at 50:14-51:14 (Pori, Moreno).

[6] Again, the Court finds that the meaning of Rochin's response was apparent, because Rochin was responding to Moreno's question regarding the object in his pocket.

car, Moreno noticed that Rochin was struggling with the handcuffs that were affixed to Rochin's wrists.  See id. at 25:10-13 (Moreno).

41.     Upon removing Rochin from the police car, Moreno observed a white crystalline substance on Rochin's hands and pants, and in the car.  See id. at 25:19-26:1 (Moreno).

42.     Moreno also observed a black piece of plastic.  See id. at 26:1-2 (Moreno).

43.     Moreno tested the white crystalline substance, and it tested positive for methamphetamine.  See id. at 26:7-12 (Cairns, Moreno).

44.     Following Rochin's arrest, Moreno called a tow truck to retrieve the Mitsubishi. See id. at 21:25-22:7 (Cairns, Moreno).

45.     Moreno and Albuquerque, New Mexico Police Officer Brown then conducted an inventory search of the Mitsubishi, which involved removing items of value from the vehicle, to prepare it to be towed to the impound lot. See id. at 21:21-24 (Moreno); id at 22:15-17 (Moreno); id. at 22:23-23:11 (Moreno).

46.     Moreno testified that the Albuquerque police inventory a vehicle to ensure that any valuable items are listed on the inventory form so that the individual's possessions are protected, and to ensure that there are no dangerous items or weapons in the vehicle. See id. at 22:23-23:11 (Moreno).

47.     During the inventory search of the Mitsubishi, Moreno found a handgun, a Colt Delta Elite 10 millimeter, semi-automatic pistol.  See id. at 23:23-24:3 (Moreno).

48.     The gun was on the floorboard of the passenger side of the Mitsubishi and was within the driver's reach.  See id. at 23:23-24:3 (Moreno).

49.     The handgun was loaded.  See id. at 23:23-24 (Moreno).

## PROCEDURAL BACKGROUND

On March 24, 2010, a federal grand jury returned an indictment charging Rochin with one count of being an illegal alien in possession of a firearm and one count of possessing a firearm with an obliterated serial number. <u>See</u> Indictment at 1-2, filed March 24, 2010 (Doc. 11). Rochin moves the Court, pursuant to the Fourth and Fifth Amendments to the United States Constitution, for an order suppressing all of the evidence that the Albuquerque Police Department seized on January 4, 2010. <u>See</u> Motion at 1. Specifically, Rochin seeks to suppress the narcotics paraphernalia, the Colt ten millimeter semi-automatic handgun, and ammunition which Moreno ultimately discovered following the allegedly unlawful pat-down search. <u>See</u> Motion at 1-2. Rochin alleges that the pat-down search was unlawful because Moreno seized the narcotics paraphernalia after he concluded that the items he felt during the search were not weapons. <u>See</u> Motion at 4. Rochin argues that the narcotics paraphernalia, the firearm, and the ammunition should be suppressed because they were obtained only after an unlawful pat-down. <u>See</u> Motion at 7.

The United States filed its original response late on the night of May 24, 2010. <u>See</u> United States' Response to Motion to Suppress at 1, filed May 24, 2010 (Doc. 26). Assistant United States Attorney Norman Cairns represents that he was tired, and the response contains some typographical errors. On the morning of May 25, 2010, the United States filed its Amended Response to Defendant's Motion to Suppress Evidence. <u>See</u> United States's Amended Response to Defendant's Motion to Suppress Evidence, filed May 25, 2010 (Doc. 27) ("Response"). This amended response contains no new arguments, but corrected the typographical errors. The United States argues that Moreno lawfully conducted the pat-down search, as he believed that Rochin might be armed and dangerous. <u>See</u> Response at 5-6. The United States also argues that Moreno's discovery of the firearm did not violate the Fourth Amendment, because Moreno had probable cause to believe that

-8-

the vehicle held narcotics evidence, the firearm was in plain view, and the firearm was discovered during an inventory search of the vehicle. <u>See</u> Response at 6-9.

On June 15, 2010, Rochin filed a Reply to the United States' Amended Response to his Motion to Suppress evidence.  <u>See</u> Defendant's Reply to the United States' Amended Response to the Defendant's Motion to Suppress Evidence, filed June 15, 2010 (Doc. 30)("Reply").  Rochin reiterated his argument that the pat-down search that Moreno conducted exceeded the scope of a lawful <u>Terry</u> search for weapons. <u>See</u> Reply at 7; <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). Rochin also argues that Moreno did not have articulable suspicion that Rochin presented any danger, because the dispatcher only warned Moreno about a Carlos Mendoza, the man who was driving the car when it was involved in a drive-by shooting.  <u>See</u> Reply at 3.

During the hearing on August 20, 2010, Moreno testified for the United States.  Moreno was the only witness to testify. During the hearing, Mr. Cairns and Mr. Pori questioned Moreno regarding the traffic stop, the pat-down search, and the search of the Mitsubishi. At the hearing, Mr. Cairns requested the Court's permission to submit a supplemental brief on the issue of the pat-down search. <u>See</u> Tr. at 126:2-6 (Cairns). The Court granted permission. <u>See id.</u> at 126:7-9 (Court). During the hearing, Mr. Pori and Mr. Cairns discussed providing the Court with the marijuana pipe or pictures of the pipe.  <u>See id.</u> at 123:10-124:3 (Court, Pori). The Court stated that it would let the parties discuss how to present the evidence to the Court. <u>See id.</u> at 125:9-12 (Court). The parties have not yet informed the Court how they will present the evidence.

The United States submitted its Supplemental Memorandum in Response to the Defendant's Motion to Suppress Evidence on September 2, 2010. <u>See</u> Supplemental Memorandum in Response to the Defendant's Motion to Suppress Evidence, filed September 2, 2010 (Doc. 36)("Supplemental Response"). The United States argues that the pat-down search was lawful, because Moreno

removed the objects from Rochin's pockets in an effort to determine whether they were weapons. See Supplemental Response at 3-6. The United States argues that the firearm was discovered pursuant to a valid inventory search, and that it would have been discovered inevitably because the vehicle had to be towed. See Supplemental Response at 6. The United States also argues that the search of the vehicle did not violate the Fourth Amendment, because an officer may conduct a protective sweep of a vehicle which he believes contains a weapon. See Supplemental Response at 6-7.

On September 16, 2010, Rochin filed a Reply to the United States' Supplemental Memorandum to the Defendant's Motion to Suppress Evidence. See Defendant's Reply to the United States' Supplemental Memorandum to the Defendant's Motion to Suppress Evidence, filed September 16, 2010 (Doc. 39)("Supplemental Reply"). Rochin argues that Moreno exceeded the scope of a lawful pat-down search when he removed two objects from Rochin's pockets. See Supplemental Reply at 1. Rochin contends that Moreno exceeded the scope of a lawful pat-down search because he did not have a subjective or reasonable belief that the objects were weapons, and because the objects' incriminating character was not immediately apparent. See Supplemental Reply at 1-8. Rochin also argues that the firearm and ammunition would not have been inevitably discovered, because under New Mexico law, Rochin could not have been arrested and held in custody for violations of the Motor Vehicle Code, and his vehicle thus could not have been towed. See Supplemental Reply at 8-10.

## RELEVANT LAW REGARDING FOURTH AMENDMENT SEARCHES

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also commands that "no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The protections of the Fourth Amendment are enforceable against state actors through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Mapp v. Ohio, 367 U.S. 643, 655 (1961); United States v. Rodriguez-Rodriguez, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008)("[T]he Fourth Amendment applies against state law enforcement officials as incorporated through the Due Process Clause of the Fourteenth Amendment.").

The hallmark of the Fourth Amendment is reasonableness.  Not all searches require a warrant. The Supreme Court of the United States has stated that,  "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted).

   1.   **Investigative Frisks and Reasonable Suspicion.**

In Terry v. Ohio, the Supreme Court of the United States held that, if an officer has reasonable and articulable suspicion that a person might be involved in criminal activity, the officer may briefly stop the person to confirm or dispel that suspicion. See 392 U.S. at 21-22.  Similarly, an officer may conduct a protective search without a warrant on the basis of reasonable suspicion to discover weapons that might be used to harm the officer or others nearby. See Minnesota v. Dickerson, 508 U.S. 366, 374 (1993);  Terry v. Ohio, 392 U.S. at 20-21.

A two-pronged test is used to assess the reasonableness of investigatory detentions and weapons searches.  See United States v. Sanchez, 519 U.S. 1208, 1212-13  (10th Cir. 2008).  First, the court must decide whether the frisk was justified at its inception.  See id.  Second, the court must determine whether the officer's actions are reasonably related in scope to the circumstances which

justified the inference.  See id. at 1213.

i.      **Reasonable Suspicion to Justify a Pat-Down Search at its Inception.**

To justify a pat-down search at its inception, an officer must harbor reasonable suspicion that

the person subjected to the frisk is armed and dangerous. See Arizona v. Johnson, 129 S. Ct. 781,

784 (2009). Reasonable suspicion is  a particularized and objective basis for suspecting the person

detained of criminal activity. See United States v. Lambert, 46 F.3d 1064, 1069 (10th Cir. 1995).

The existence of objectively reasonable suspicion of illegal activity depends on the totality of the

circumstances. See United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997).

In United States v. Lazos, 314 F. App'x 127 (10th Cir. 2009), the United States Court of

Appeals for the Tenth Circuit found that the officer had reasonable suspicion that the defendant was

armed and dangerous at the inception of the pat-down search. See id. at 132.   The Tenth Circuit

found that the circumstances supported a finding of reasonable suspicion because the officer had

received information that the defendant might be involved in drug trafficking, the officer had heard

a report that the defendant had previously brandished a gun, the stop was made at 3:30 a.m., and the

defendant acted in a suspicious manner at the stop, such as exiting the car in a manner that avoided

facing the officer directly.  See id. at 133.

ii.      **The Scope of a Pat-Down Search.**

The purpose of a pat-down search is to allow the officer to pursue his investigation without

fear of violence and not to discover evidence of crime. See United States v. Albert, 579 F.3d 1188

(10th Cir. 2009). Because the sole justification of a pat-down search is the protection of the police

officer, the search must "therefore be confined in scope to an intrusion reasonably designed to

discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry

v. Ohio, 392 U.S. at 29. Where, during a pat-down, an officer continues to explore a defendant's

pocket after concluding that it does not contain a weapon, the search has exceeded the scope of the pat-down search authorized in <u>Terry v. Ohio</u>.  <u>See</u> <u>United States v. Albert</u>, 579 F.3d at 1195.  Under <u>Terry v. Ohio</u>, however, an officer may continue to investigate an object during a pat-down search if the officer has a reasonable belief that the object he feels might be a weapon. <u>See</u> <u>United States v. Harris</u>, 313 F.3d 1228, 1238 (10th Cir. 2002). The Supreme Court has held that a police officer may seize nonthreatening contraband detected during a pat-down search as long as the officer's search stays within the bounds marked by <u>Terry v. Ohio</u>.  <u>See</u> <u>Minnesota v. Dickerson</u>, 508 U.S. at 373.

In <u>Minnesota v. Dickerson</u>, the Supreme Court held that an officer exceeded the bounds of a pat-down search when he recognized that the lump in the suspect's pocket was not a weapon, yet further manipulated the object to be able to identify it as crack cocaine.   <u>See</u> 508 U.S. at 376-78. The Supreme Court stated that "the officer's continued exploration of [the suspect's] pocket after having concluded that it contained no weapon was unrelated to 'the sole justification of the search [under <u>Terry</u>:] . . . the protection of the police officer and others nearby." <u>Id.</u> at 378 (citing <u>Terry v. Ohio</u>, 329 U.S. at 29).

Courts have addressed the question of what level of certainty an officer must possess before removing an unknown object that is detected during a pat-down search. An officer may seize non-threatening contraband detected during a pat-down search if the object's contours and mass make its identity as contraband immediately apparent.  <u>See</u> <u>Minnesota v. Dickerson</u>, 508 U.S. at 345-46. When an officer is not able to rule out the possibility that the unknown object is a weapon, however, the standard is different. <u>See</u> <u>United States v. Harris</u>, 313 F.3d at 1237. The standard is one of reasonableness.  An officer may seize the object as long as he or she has a reasonable belief that the object might be a weapon. <u>See</u> <u>id.</u> ("[S]o long as [the officer has] a reasonable belief that the object

[he or she feels] might be a [weapon], [the officer continues] to have a right under Terry to . . . investigate further.").

In United States v. Harris, the Tenth Circuit addressed the defendant's argument that the officer exceeded the permissible scope of a pat-down search by reaching into the defendant's boot and pulling out a Saran Wrap package of cocaine. See id. at 1237. Once the officer began patting down the defendant's left leg, he felt a hard object in the defendant's boot. See id. Thinking that the object might be a gun, the officer pulled up the defendant's pant leg and saw a Saran Wrap package. See id. As the officer was still unsure what the object was, he reached into the defendant's boot to retrieve it. See id. The Tenth Circuit held that this action was permissible. See id. The Tenth Circuit rejected the defendant's argument that the officer's action exceeded the permissible scope of a pat-down search, because, even after the officer had lifted the defendant's pant leg, he was still unsure what the object was, and the officer never testified that he ruled out that the object was a weapon. See id.

Other federal courts have held that an officer may remove an unknown object, detected during a pat-down search, that he or she reasonably believes could be a weapon. See United States v. Hanlon, 401 F.3d 926, 929-30 (8th Cir. 2005)(finding that the pat-down search stayed within the bounds of Terry v. Ohio when the officer never concluded that weapons were not present and instead testified that he was concerned that the small object he detected might have been a weapon); United States v. Holmes, 385 F.3d 786, 790 (D.C. Cir. 2004)(holding that the officer did not act unreasonably when he removed a hard object from the suspect's pocket, even though the suspect told the officer it was a scale, because a reasonable officer could have believed that the object was a weapon); United States v. Majors, 328 F.3d 791 (5th Cir. 2003)(holding that an officer's continued search of the suspect's pocket was justified under Terry v. Ohio when he could not tell

if the bulge contained a weapon and had "not ruled out the possibility that the bulge was a weapon");

United States v. Partee, No. 07-CR-200, 2007 WL 3272477, at *4 (E.D. Wis. Nov. 2, 2007)(finding

that the officer did not exceed the scope of a pat-down search when he removed an object from the

suspect's pocket, even though the officer testified that he was unsure what the object was, because

he believed that the object might have been a weapon).

      **2.**      **Inventory Searches.**

      A warrantless inventory search of a vehicle is one of the exceptions to the warrant and

probable-cause requirements in the Fourth Amendment. See South Dakota v. Opperman, 428 U.S.

364, 372 (1976). Inventory searches developed in response to three needs: (I) the need to protect the

owner's property while it remains in police custody; (ii) the need to protect the police against claims

or disputes over lost, stolen, or vandalized property; and (iii) the need to protect the police from

danger. See id. at 369. A warrantless inventory search is proper when the search is conducted

pursuant to standard police procedures for the purpose of protecting the car and its contents.  See

United States v. Lugo, 978 F.2d 631, 636 (1992)("When the police acquire temporary custody of

a vehicle, a warrantless inventory search of the vehicle does not offend Fourth Amendment

principles so long as the search is made pursuant to 'standard police procedures' and for the purpose

of 'protecting the car and its contents.'")(citing South Dakota v. Opperman, 428 U.S. at 372)).

Evidence must support the government's assertion that the search was conducted pursuant to

standard procedures, and for the purpose of protecting the car and its contents. Cf. United States v.

Allen, 43 F.App'x 363, 365 (10th Cir. 2002) (stating that ample evidence supports the district

court's determination that the primary purpose of the inventory search was administrative and not

investigative).  A court can consider an officer's testimony regarding the procedures and the purpose

of the search as evidence. See id.  A written policy concerning inventory searches is not necessary;

an oral policy is sufficient to meet the standard procedure test that the Tenth Circuit articulated in United States v. Lugo. See Molina v. Spanos, No. 98-CR-4119, 1999 WL 626126, at *9 (10th Cir. Aug. 18, 1999); United States v. Jacquez, 409 F. Supp. 2d 1286, 1298 (D.N.M. 2005)(Browning, J.).

## RELEVANT LAW OF THE EXCLUSIONARY RULE

When evidence is obtained in violation of a person's constitutional rights, the police will be prohibited from using that evidence in a criminal prosecution of that person.  See United States v. Calandra, 414 U.S. 338, 347 (1974)("Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.")(citations omitted). The police are prohibited from using evidence that is obtained as a result of a constitutional violation as well. See McDonald v. United States, 335 U.S. 451, 453 (1948).  For the exclusionary rule to apply, the defendant need show, by a preponderance of the evidence, a constitutional violation, and a causal nexus between the violation and the evidence sought to be excluded.  See United States v. Torres-Castro, 470 F.3d 992, 999 (10th Cir. 2006). Once the defendant makes this showing, if the prosecutor still desires to proffer the challenged evidence, the burden shifts to the prosecution to establish that some exception to the exclusionary rule applies. See id.

## ANALYSIS

The Court will first address whether the pat-down search of Rochin was conducted in violation of the Fourth Amendment. The Court finds that Moreno's search of Rochin did not violate the Fourth Amendment because Moreno had reasonable suspicion that Rochin was armed and dangerous, and Moreno's actions did not exceed the permissible scope of a pat-down search. The Court next addresses Rochin's argument that the Court should exclude the firearm and ammunition

discovered in the Mitsubishi, as they were found as the result of a constitutional violation. Because the Court finds that the pat-down search was not a violation of the Fourth Amendment, the Court will not exclude the firearm and ammunition. The Court finds that the firearm and ammunition were not obtained as a result of a constitutional violation; instead, they were obtained as the result of a valid inventory search.

**I.** **MORENO'S PAT-DOWN SEARCH OF ROCHIN WAS A PERMISSIBLE <u>TERRY FRISK</u>.**

The Court finds that Moreno's pat-down search of Rochin did not violate the Fourth Amendment. The Court first finds that Moreno had reasonable suspicion that Rochin was armed and dangerous, because the dispatcher gave Moreno information that the driver of the Mitsubishi might be armed, Moreno believed that Rochin's behavior was suspicious, and the stop was conducted at 2:30 a.m. A reasonably prudent officer in the circumstances would have reasonably believed that his safety was in danger. The Court then finds that Moreno's actions during the pat-down search did not exceed the permissible scope of a <u>Terry</u> frisk. Moreno's actions did not exceed the permissible scope of a pat-down search because, although he was unsure what the objects in Rochin's pockets were, he believed that they were large enough to be weapons, and, given the circumstances, concluded that he had to remove the objects to determine whether they could be used to harm him.

**A.** **THE PAT-DOWN WAS JUSTIFIED AT ITS INCEPTION BECAUSE MORENO HAD REASONABLE SUSPICION THAT ROCHIN WAS ARMED AND DANGEROUS.**

Rochin asserts that Moreno did not have reasonable suspicion that Rochin was armed and dangerous when he conducted the pat-down. <u>See</u> Reply at 5-6. The United States argues that Moreno had reasonable suspicion that Rochin was armed and dangerous because Moreno had information that the vehicle that Rochin was driving and the driver of the vehicle had been involved in a drive-by

shooting. See Supplemental Response at 5-6.

The Court finds that, at the inception of the pat-down search, Moreno had reasonable suspicion that Rochin was armed and dangerous. An officer may conduct a pat-down search if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." United States v. Rice, 483 F.3d 1079, 1082-83 (10th Cir. 2007). The existence of objectively reasonable suspicion of illegal activity depends on the totality of the circumstances. See United States v. Wood, 106 F.3d 942, 946 (10th Cir. 1997).

The totality of the circumstances support a finding that Moreno had reasonable suspicion that Rochin was armed and dangerous. Moreno received information from the dispatcher that the driver of the Mitsubishi might be armed and dangerous. See Tr. at 11:4-19 (Moreno). The stop was conducted at 2:30 a.m., and Moreno believed that Rochin's behavior was suspicious. See Tr. at 7:4-13 (Moreno); id. at 31:16-18 (Pori, Moreno).

A reasonably prudent officer in Moreno's situation might have feared for his safety. As Moreno was approaching the Mitsubishi, the dispatcher told him to use caution as the vehicle had been involved in a drive-by shooting and the driver, a man named Carlos Mendoza, may be armed. See Tr. at 11:4-19 (Moreno).  Rochin argues that, because the dispatcher warned Moreno to use caution when encountering Carlos Mendoza, not Rochin, Moreno did not have reasonable suspicion that Rochin was armed and dangerous. See Reply at 3-6.  At the hearing, Moreno stated that, although he obtained identification from Rochin, he did not take note of Rochin's name. See Tr. at 14:25-15:1 (Moreno).  Moreno stated that he did not take note of the name on Rochin's identification because he was concentrating on other things, such as letting the dispatcher know that he had received the information, and that he knew that backup officers were coming. See Tr. at 14:19-15:5 (Moreno). Although the circumstances might have been different had Moreno examined

-18-

the identification, he did not.  Moreno did not know that the man driving the Mitsubishi was not

Carlos Mendoza. Moreno's mistake regarding Rochin's identity does not negate the existence of

reasonable suspicion.  Cf. Hill v. California, 401 U.S. 797 (1971)(stating that, when "the police have

probable cause to arrest one party, and when they reasonably mistake a second party for the first

party, then the arrest of the second party is a valid arrest")(citations omitted); Sherouse v. Ratchner,

573 F.3d 1055, 1059 (10th Cir. 2009)(stating that "an officer's reasonable but mistaken

understanding of the facts justifying a search or seizure does not negate the legitimacy of a probable

cause determination"); United States v. Pena-Montes, 589 F.3d 1048, 1054 (10th Cir. 2009)(stating

that an "officer's reasonable mistake of fact, as distinguished from a mistake of law, may support

the probable cause or reasonable suspicion necessary to justify a traffic stop")(citations omitted).

The totality of the circumstances support a finding that Moreno had reasonable suspicion that

Rochin was armed and dangerous. This situation is similar to the situation that the Tenth Circuit faced

in United States v. Lazos, where the Tenth Circuit found that the time of the stop, the

defendant's suspicious behavior, and the information that the defendant was involved in drug

trafficking and had previously brandished a gun supported a finding of reasonable suspicion that the

defendant was armed and dangerous.  See United States v. Lazos, 314 F. App'x 127, 133 (10th Cir.

2009). Given Moreno's perception that Rochin was trying to avoid eye contact as he was driving,

the fact that the stop occurred at 2:30 a.m., and the warning that the dispatcher gave, the Court finds

that Moreno had reasonable suspicion that Rochin was armed and dangerous.

## B.    MORENO'S ACTIONS DURING THE PAT-DOWN SEARCH DID NOT EXCEED THE PERMISSIBLE SCOPE OF A TERRY FRISK.

Rochin argues that Moreno exceeded the permissible scope of a pat-down search when he

pulled the narcotics paraphernalia out Rochin's pockets. See Reply at 7.  The United States argues

that Moreno did not exceed the permissible scope of a pat-down search because he removed the objects to determine whether they could be used to harm him after he was unable to tell whether they were weapons during the pat-down. See Supplemental Response at 3.

The Court finds that Moreno's actions during the pat-down search did not exceed the permissible scope of such a search. Because the sole justification for a pat-down search is "the protection of the police officer and others nearby, [a pat-down search] must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry v. Ohio, 392 U.S. at 29. An officer may continue to investigate an object during a search if the officer has a reasonable belief that the object he feels might be a weapon. See United States v. Harris, 313 F.3d at 1238. When evaluating the validity of a pat-down search, the totality of the circumstances must be taken into account. See id. at 1234.

Moreno's actions did not exceed the permissible scope of a pat-down search, because, when he pulled the objects out of Rochin's pockets, he had a reasonable belief that the objects might have been weapons. At the hearing, Moreno testified that, after patting down Rochin, he did not know whether the bulge that he felt in Rochin's right pocket was a weapon. See Tr. at 16:6-12 (Moreno). Moreno asked Rochin what the object was, and Rochin stated, "No sabe," which Moreno interpreted as meaning "I don't know." Id. at 51:16-52:9 (Pori, Moreno). Moreno stated that he removed the object, because, based on the circumstances, it was large enough for him to think that it could have been a weapon and that he was not safe leaving it there. See id. at 53:19 (Moreno); id. at 97:20-21 (Moreno); id. at 16:6-12 (Moreno).

Moreno then continued the pat-down search and felt another bulge in Rochin's left pocket. See id. at 19:15-19 (Cairns, Moreno). Moreno asked Rochin what the object was, and Rochin stated "No sabe," which Moreno again interpreted as meaning "I don't know." Id. at 53:23-54:3 (Pori,

Moreno); id. at 54:5-8 (Pori, Moreno). Moreno testified that he removed the object, because it was large enough to be a weapon and he thought, based on the circumstances, that it might have been a weapon. See id. at 54:19-23 (Pori, Moreno). Moreno had a reasonable belief that the objects might be weapons, based on the circumstances surrounding the pat-down search, including the dispatcher's report that the driver might be armed.

Moreno's testimony that he did not know what the object was does not automatically put his actions outside the scope of a lawful pat-down search.  See United States v. Harris, 313 F.3d at 1237 (finding that the officer's actions were permissible when the officer testified that he was not sure what the object was, but that he never ruled out the possibility that the object was a weapon); United States v. Partee, 2007 WL 3272477, at *4  (finding that the officer did not exceed the scope of a pat-down search when he pulled an object out of the defendant's pockets, because even though the officer was "unsure" of what the object was, he believed it may have been a weapon). Although Moreno testified that he was not sure what the objects were, he did not know they were not weapons, and they were large enough for him to think that they could be weapons.

This case is distinguishable from Minnesota v. Dickerson, where the officer conducted an unlawful pat-down search because he continued to manipulate the lump in the suspect's pocket, even after he knew that the object was not a weapon. See Minnesota v. Dickerson, 508 U.S. at 377-78. This case does not present a situation where an officer seized non-threatening contraband from a suspect's pockets. Moreno testified that the objects were large enough for him to think that they could be weapons and that he was not comfortable leaving the objects in Rochin's pockets. Furthermore, Moreno's belief that the objects in Rochin's pockets might be weapons was reasonable.  The dispatcher had recently told him that the driver of the Mitsubishi might be armed and dangerous, and Moreno believed that Rochin's behavior was suspicious. The Court thus finds

that Moreno did not exceed the permissible scope of the search when he pulled out the objects because he had a reasonable belief that they might be weapons.  See United States v. Harris, 313 F.3d at 1238 (stating that the officer did not exceed the permissible scope of the search when he pulled out an object that he thought might have been a weapon).

## II.     THE FIREARM AND AMMUNITION ARE ADMISSIBLE, AS THEY WERE NOT OBTAINED AS THE RESULT OF A CONSTITUTIONAL VIOLATION; INSTEAD, THEY WERE OBTAINED AS THE RESULT OF A VALID INVENTORY SEARCH.

Rochin argues that the Court should exclude the firearm and ammunition from the evidence, as they were obtained as the result of a constitutional violation. Rochin contends that, because the pat-down search was illegal, the Court should exclude the evidence that was found during the inventory search of the Mitsubishi following his arrest. Because the Court has found that Moreno did not exceed the permissible scope of a pat-down search, the Court will not exclude the firearm and ammunition on the basis of the theory that they were obtained as the result of a constitutional violation.

The Court finds that the firearm and ammunition were discovered in a valid inventory search following Rochin's arrest. A warrantless inventory search of a vehicle is one of the exceptions to the warrant and probable-cause requirements in the Fourth Amendment. See South Dakota v. Opperman, 428 U.S. at 372. An inventory search is proper when the search is conducted pursuant to standard police procedures for the purpose of protecting the car and its contents.  See United States v. Lugo, 978 F.2d at 636.  After Rochin was arrested, Moreno called a tow truck to retrieve the Mitsubishi. See Tr. at 21:25-22:7 (Cairns, Moreno).  Moreno and Brown then conducted an inventory search to prepare the Mitsubishi to be towed. See id. at 21:21-24 (Moreno); id at 22:15-17 (Moreno).  Moreno testified that the Albuquerque police inventory a vehicle before it is towed to ensure that any valuable items are listed on the inventory sheet so that the individual's possessions

are protected and to ensure that there are no dangerous items or weapons in the vehicle. See id. at 22:23-23:11 (Moreno).  Moreno testified that, when he opened the passenger door to conduct the inventory search, he looked inside and saw the firearm. See id. at 23:18-24:3 (Moreno). The firearm was loaded. See id. at 24:17-23 (Cairns, Moreno).

The Court finds, based on Moreno's testimony, that the inventory search was conducted pursuant to the Albuquerque Police Department's standard procedure of conducting an inventory search of a vehicle before it is towed so that any valuable items are listed on the inventory sheet. The Court also finds, based on Moreno's testimony, that the inventory search was done for the purpose of protecting the car and its contents. The inventory search was thus a valid search, and the firearm and ammunition are admissible under this exception to the warrant requirement of the Fourth Amendment.

**IT IS ORDERED** that the Defendant's Motion to Suppress, filed April 28, 2010 (Doc. 21) is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Norman Cairns
  Assistant United States Attorney
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Brian A. Pori
  Assistant Federal Public Defender
Office of the Federal Public Defendant
Albuquerque, New Mexico

  *Attorney for the Defendant*